**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0639n.06
No. 11-3188

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 18, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| KATIE M. NORRIS, | ) |
| | ) |
| Plaintiff-Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| SMART DOCUMENT SOLUTIONS, LLC, | ) |
| fka Smart Corp., | ) O P I N I O N |
| | ) |
| Defendant-Appellee. | ) |

BEFORE:     WHITE, STRANCH, and FARRIS[*], Circuit Judges.

**FARRIS, Circuit Judge.**  Katie Norris brought an action against Smart Document Solutions, alleging that Smart induced her medical provider to disclose Norris's confidential medical information to Smart.  The district court granted Smart's motion to dismiss.  It held that Ohio Revised Code § 2305.09's four-year statute of limitations barred Norris's suit.  We have jurisdiction under 28 U.S.C. § 1291.  We accept the complaint's allegations as true and review the district court's decision *de novo*.  *See Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010).  We affirm.

Norris sued Smart on August 26, 2010.  The complaint alleged that on or about April 16, 2002, Norris requested a copy of her medical records from her medical provider.  The provider hired Smart to copy the records and send a copy to Norris.  Norris alleged that Smart, by entering into a

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

contract with the provider to fulfill the provider's records requests, induced the provider to disclose Norris's confidential information. This disclosure, she alleged, violated her rights to privacy and the confidentiality of her medical information. "In Ohio, an independent [common-law] tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship," and "[a] third party can be held liable for inducing [such] disclosure . . . ." *Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518, 519 (Ohio 1999).

Smart moved to dismiss the complaint. It argued that Ohio Revised Code § 2305.09's four-year statute of limitations bars Norris's suit. "R.C. 2305.09 provides a general limitations period of four years for tort actions not specifically covered by other sections of the Ohio Revised Code." *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989) (internal footnote omitted). R.C. 2305.09 provides:

> Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> (A) For trespassing upon real property;
> (B) For the recovery of personal property, or for taking or detaining it;
> (C) For relief on the ground of fraud, except when the cause of action is a violation of section 2913.49 of the Revised Code, in which case the action shall be brought within five years after the cause thereof accrued;
> (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code;
> (E) For relief on the grounds of a physical or regulatory taking of real property.
>
> If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.

Smart further argued that the "discovery rule" appearing at the end of R.C. 2305.09 does not apply to Norris's action. Therefore, Smart argued, Norris's cause of action accrued on or about April

16, 2002, when the alleged wrong occurred. *See Collins v. Sotka*, 692 N.E.2d 581, 582 (Ohio 1998) ("Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed," unless a discovery rule applies.). Even if the limitations period was tolled by a class action pending in the Ohio courts from October 20, 2006 through December 9, 2009 alleging virtually identical claims, Smart argued that Norris's August 26, 2010 complaint failed to state a claim for relief from alleged harm occurring before July 5, 2003. The district court agreed and dismissed the suit.

Norris asks us to apply R.C. 2305.09's discovery rule. She relies on arguments that were not raised in the district court. Even assuming that Norris presents an "exceptional case[]," in which a "plain miscarriage of justice" would result from our refusal to consider these arguments, *St. Marys Foundry, Inc. v. Emp'rs Ins. of Wausau*, 332 F.3d 989, 996 (6th Cir. 2003), she is not entitled to relief.

Norris argues that her medical information is "intangible personal property," and so R.C. 2305.09's discovery rule, which applies to claims for "the wrongful taking of personal property," tolls the four-year statute of limitations. This argument fails. Under Ohio law, an action for the wrongful taking of personal property is an action for conversion. *See Investors REIT One*, 546 N.E.2d at 211. "Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Disciplinary Counsel v. Squire*, 958 N.E.2d 914, 924 (Ohio 2011) (internal quotation marks and indication of alteration omitted). Norris's complaint does not allege that Smart exercised dominion over her medical records or the information they contained to the exclusion of Norris, or otherwise withheld the records from her possession. The complaint alleges only "a loss of

*confidentiality* of her medical records and *invasion of privacy*" (emphasis added). These alleged torts are not among those enumerated in the discovery provision of R.C. 2305.09—which the Ohio Supreme Court declared "exclusi[ve] of other torts arising under the statute . . . ." *Investors REIT One*, 546 N.E.2d at 211. The discovery rule does not apply.

*Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984), does not alter our conclusion. In *Hambleton*, the plaintiffs had invented a novel process for manufacturing footwear and had disclosed their ideas to the defendant footwear manufacturer. *Id.* at 1299. The manufacturer provided the plaintiffs with funds to produce a prototype and to set up laboratory facilities. *Id.* The manufacturer then "arbitrarily locked them out of their laboratory" and "without [their] consent, used their ideas and concepts to produce a line of footwear . . . without providing them compensation therefor." *Id.* The Ohio Supreme Court held that the plaintiffs' claim was for conversion, *id.* at 1302, arose under R.C. 2305.09(B), and was covered under R.C. 2305.09's discovery rule. *Id.* at 1300. By contrast, Norris has not alleged conversion.

In *Biddle*—where the Ohio Supreme Court recognized the common-law tort of unauthorized disclosure of confidential medical information—the court explicitly rejected attempts "to fit a breach of confidence into a number of traditional or accepted legal theories." *Biddle*, 715 N.E.2d at 523. *Biddle* held instead that "a more appropriate basis [for the tort] can be found in the nature of the physician-patient relationship itself, either because of its fiduciary character or because it is customarily understood to carry an obligation of secrecy and confidence," and that "an action for breach of confidence should stand in its own right, . . . as an independent tort . . . ." *Id. Biddle*'s clear instruction that Norris's cause of action is its own independent tort forecloses an argument that her action should be understood as one for the long-recognized tort of wrongful taking of personal

property.

Norris urges us to consider the Ohio Supreme Court's admonition that, "in determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." *Hambleton*, 465 N.E.2d at 1302. Again, *Biddle* forecloses Norris's argument. Before announcing that the unauthorized disclosure of confidential medical information would constitute its own independent tort, *Biddle* discussed the various theories "courts ha[d] utilized" in the past "in attempting to provide a legal identity for [the tort]." *Biddle*, 715 N.E.2d at 522-23. Those theories included "invasion of privacy, defamation, implied breach of contract, intentional and negligent infliction of emotional distress, implied private statutory cause of action, breach of trust, detrimental reliance, negligence, and medical malpractice." *Id.* at 523. Although the theories advanced by Norris were not among those expressly rejected by the Ohio Supreme Court as equivalent to unauthorized disclosure, those torts are similarly "designed to protect diverse interests that only coincidentally overlap that of preserving patient confidentiality." *Id.*

Norris's complaint fails to allege any of the causes of action listed in R.C. 2305.09 to which the discovery rule applies. "In construing questions of state law, [we] must apply state law in accordance with the controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). We must read R.C. 2305.09's enumerated list of torts to which the discovery rule applies as "exclud[ing]" the tort of unauthorized disclosure of confidential medical information. *Investors REIT One*, 546 N.E.2d at 211. That tort "aris[es] under" R.C. 2305.09(D) but does not appear in the discovery rule's enumerated list. *Id.*; *see, e.g.*, *Flagstar*

*Bank, F.S.B. v. Airline Union's Mortg. Co.*, 947 N.E.2d 672, 678-79 (Ohio 2011).

Norris's second argument is that "R.C. 2305.09 would violate the Ohio and United States Constitutions under the district court's interpretation." Norris argues that R.C. 2305.09's discovery rule, as interpreted by the district court, violates the "open-courts" and "right-to-remedy" provisions of Article I, § 16 of the Ohio Constitution. Article I, § 16 provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Norris argues that the unavailability of the discovery rule violates this constitutional provision because it "places [her] in the . . . untenable position of bringing a claim before she kn[e]w[] that she ha[d] suffered any injury whatsoever." *Investors REIT One* forecloses this argument. In *Investors REIT One*, the Ohio Supreme Court held that R.C. 2305.09's discovery rule does not apply to claims of accountant malpractice—claims which, like Norris's claim, arise under R.C. 2305.09(D). "In [the dissenting judge's] view, the majority's application of R.C. 2305.09(D), so as to bar the claims of accountant malpractice plaintiffs who did not know or could not reasonably have known of their injuries, clearly violate[d] the 'open-courts' or 'right-to-a-remedy' provision of Section 16, Article I of the Ohio Constitution." *Investors REIT One*, 546 N.E.2d at 213 (Sweeney, J., concurring in part and dissenting in part). The majority implicitly rejected Judge Sweeney's view that the court's interpretation of R.C. 2305.09 rendered the statute unconstitutional. The Ohio Supreme Court later explicitly stated that it had "rejected [such] concerns over the right-to-remedy clause that were raised by the dissent in *Investors REIT One* . . . ." *Flagstar*, 947 N.E.2d at 679.

Norris also claims that R.C. 2305.09's discovery rule, as interpreted by the district court, deprives her of a property interest (her cause of action) without notice and an opportunity to be

heard, thereby depriving her of her due process rights under the U.S. and Ohio Constitutions. We have already established that R.C. 2305.09, as interpreted by the district court, does not impinge upon Norris's fundamental rights to open courts and remedies for injuries. Rational-basis review applies to her due process claims. *See Groch v. Gen. Motors Corp.*, 883 N.E.2d 377, 404-05 (Ohio 2008); *Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 433 (Ohio 2007) ("When reviewing a statute on due-process grounds, we apply a rational-basis test unless the statute restricts the exercise of fundamental rights."). Under rational-basis review, "the statute will be upheld if it is rationally related to a legitimate government purpose and is not unreasonable or arbitrary." *Groch*, 883 N.E.2d at 405.

"Statutes of limitations serve a gate-keeping function for courts by (1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay—specifically, the difficulties of proof present in older cases." *Flagstar*, 947 N.E.2d at 675 (internal quotation marks and citation omitted). The legislature's exclusion of Norris's claim from the ambit of R.C. 2305.09's discovery rule serves all of these functions and is thus "rationally related to a legitimate government purpose." *Groch*, 883 N.E.2d at 405. The district court properly dismissed Norris's claim.

Norris's complaint also included a class claim "on behalf of all persons who have experienced and suffered in Ohio a loss of the confidentiality of their medical records and/or an invasion of privacy by Smart." The district court's dismissal of the entire complaint—not just Norris's claim—was proper. *See J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008) ("If it is found, prior to class certification, that the named plaintiffs' individual claims are without merit, then dismissal is proper.").

**AFFIRMED.**